IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY GOLSTON, #143325, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:11-CV-946-MHT |
| ) | [WO] |
| ) | |
| MATTHEW ENFINGER and KERRY ) | |
| WILLIAMS, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed *pro se* by Anthony Golston ("Golston"), a state inmate, arising from actions and conditions that occurred during his confinement at the Easterling Correctional Facility ("Easterling"). On February 23, 2015, the court entered summary judgment for the defendants on all claims except the excessive force and failure to protect claims lodged against defendants Matthew Enfinger and Kerry Williams, correctional officers at Easterling, and therefore terminated all defendants except Enfinger and Williams. *Doc. No. 45*.

The Magistrate Judge conducted an evidentiary hearing on March 31, 2015, *see* 28 U.S.C. § 636(b)(1)(B), regarding Golston's remaining excessive force and failure to protect

claims.[1]  The challenged use of force by Officer Enfinger and alleged concomitant failure to protect by Sgt. Williams occurred on December 8, 2010, at Easterling.  After duly considering all relevant testimony and the admitted exhibit, against the backdrop of the record in this case, the Magistrate Judge concludes that judgment should be entered in favor of defendants Enfinger and Williams.

## II.  EVIDENTIARY HEARING

The evidentiary hearing proceeded on the issue of whether, on December 8, 2010, defendant Enfinger subjected Golston to an unprovoked and malicious use of force by repeatedly hitting Golston in the face, kicking him and ramming his head into the wall in the presence of defendant Williams, an attack from which Williams provided Golston no protection.  As evidentiary support for his claims, Golston relies on his testimony and the testimony of two inmate witnesses, Edgar Riggins and Charles Whigham.  For their defense, the defendants each provided testimony as did Kay Wilson, a Registered Nurse and the Health Services Administrator for Easterling.  The defendants also entered into evidence a copy of Golston's body chart prepared a few minutes after the altercation on December 8, 2010.  *Defendants' Hearing Exhibit A*; *Defendants' Exhibit F to the Special Report - Doc. No. 14-8*.

According to his sworn testimony, Golston was evaluated by medical personnel on

---

[1]None of the parties filed a jury demand.

December 7, 2010, regarding his complaint of a migraine headache referenced in a prior sick call request.  The attending nurse prescribed Golston a five-day supply of Tylenol and stated she would refer him to the facility's physician for evaluation of his condition.  On December 8, 2010, at approximately 7:30 p.m., Golston complained to Officer Enfinger that he was again experiencing a migraine headache and requested permission to report to the health care unit for treatment.  Golston testified Enfinger advised him to ask the cube officer for permission to go to the health care unit.  Golston stated he went to the cube officer and this officer simply advised him to "sign up for sick call."  As he attempted to exit the cubical area, Golston testified he "stumbled into the garbage cans and knocked the garbage cans over."  At this time, Officer Enfinger ordered Golston to report to the hallway and place his hands behind his back.  Golston complied with these orders and Enfinger placed handcuffs on Golston.  Golston testified a correctional officer other than Enfinger escorted him to the shift office.

Golston testified upon his arrival at the shift office Sgt. Williams ordered Officer Enfinger to report to the shift office.  Golston stated that when Officer Enfinger arrived at the shift office, Sgt. Williams ordered him to "step out and sit on the bench."  According to Golston's testimony, after a short period of time Officer Enfinger ordered him to come back into the shift office at which time Enfinger "punched [him] in the face" causing Golston to fall to the floor.  Golston further testified Enfinger struck him in the face four

times and, while he was on the floor, Enfinger repeatedly kicked him in the back and groin area and thereafter picked him up from the floor and ran him into the wall causing a laceration to his head.  Golston acknowledged that Officer Johnson escorted him to the health care unit for evaluation by medical personnel.  Golston further testified he did tell the nurse he had a migraine headache but also explained to her "the other things" which had occurred that day.

According to the notes of the attending nurse, Golston simply advised her that he had "a migraine headache." *Defendants' Hearing Exhibit A*; *Defendants' Exhibit F to the Special Report - Doc. No. 14-6*.  The nurse conducted an examination of Golston during which she observed only a "small scratch" to the inmate's right forehead and cleaned this area with "normal saline." *Id*.  The nurse noted no other injuries to Golston and provided no instructions for additional treatment.  *Id*.  Upon completion of her examination, the nurse released Golston back to correctional officials.  *Id*.  Golston testified that in addition to the laceration on his forehead he also suffered swelling to his face, an injury to his jaw, back pain and testicular pain.

Each inmate witness called by Golston testified that he was not present in the shift office during the altercation between Golston and Officer Enfinger.  Additionally, inmate Riggins testified that prior to Golston entering the shift office he did not observe any injuries on Golston but around 4:00 a.m. the following morning when placed in a

segregation cell with Golston he observed Golston's "right jaw [and] temple swollen . . . the left side of [his] forehead had a bunch of knots and they was bleeding." Riggins also testified that Golston complained of pain in his ribs and went without eating for approximately a week.

Inmate Whigham, the shift office runner, testified that he was in the area of the shift office when Golston arrived "being escorted by Officer Enfinger."[2] Whigham further testified he was outside the shift office during the altercation and therefore did not witness any physical contact between Golston and Enfinger but "heard like shoes/boots squeaking and the door rattling." Whigham stated he also heard Golston "yelling" he had not done anything and did not "deserve this." Finally, Whigham testified when Golston exited the shift office he observed Golston "bleeding" from his forehead and later that evening noticed Golston's face was "swollen."

At the time of the incident about which Golston complains, the defendants were employed as correctional officers at Easterling. Defendant Enfinger testified that on the day of the incident Golston approached him "complaining of a migraine headache" and requested to go to the health care unit. At that time, Enfinger radioed the cube officer regarding Golston's request. The cube officer contacted the health care unit and was advised by medical personnel to tell Golston to put in another sick call request. Enfinger

---

[2]This testimony is in contrast to that of Golston who testified that Enfinger did not escort him to the shift office.

received this information and "advised Mr. Golston to put another sick call slip in and he become hostile and started kicking over trash cans so I escorted him to the lobby, placed handcuffs on him to the rear and escorted him to the shift office." Sgt. Williams testified Enfinger escorted Golston to the shift office and once Enfinger and Golston arrived, Enfinger advised Williams of Golston's behavior. Williams questioned Golston about kicking over the trash cans and Golston denied he had done it. Williams testified he verbally reprimanded Golston about his behavior and then told Officer Enginfer to escort Golston back to the dorm. Officer Enfinger testified he placed Golston in the escort position with Golston slightly in front and to the side of him. According to the testimony of both Enfinger and Williams, Golston then "kicked toward" Enfinger and Enfinger "restrained [Golston] to the floor" which caused Golston to fall face first. The defendants testified this was the only force used against Golston. Officer Enfinger testified he did not hit or kick Golston. Sgt. Williams testified he did not hit or kick Golston nor did he see Officer Enfinger or any other officer hit or kick Golston. Once Golston ceased resisting he was placed on his feet and Sgt. Williams ordered Officer Johnson to escort Golston to the health care unit for evaluation.

Ms. Wilson served as the last witness for the defense. She testified that the body chart was a work record kept in the normal course of business by both the Alabama Department of Corrections and Corizon, Inc., the prison system's medical care provider,

and also interpreted the abbreviations contained in the body chart. Upon motion by defense counsel, the court admitted the body chart into evidence.

### III. DISCUSSION

#### A. Excessive Force Standard

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the

7

>need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S. Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Id*. at 1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. 503 U.S. at 9; *but see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Whether a defendant's use of force is excessive, and thus violative of an inmate's right to be free from cruel and unusual punishment, "depends on whether the [defendant's] act 'shocks the conscience,'" *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force "'was applied . . . maliciously and sadistically for the very purpose of causing harm.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting *Whitley v. Albers*, 475

U.S. 312, 320-21 (1986). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327); *Brooks v. Kyler*, 204 F.3d 102, 103 (3d Cir. 2000) (holding there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to present an excessive force claim).

Notwithstanding that a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in serious injury. *Hudson*, 503 U.S. at 8. Rather, the key inquiry under *Hudson* is whether the alleged conduct involved "unnecessary and wanton infliction of pain." *Id*. While the Supreme Court recently emphasized that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm,'" the Court further noted that to require a showing of significant injury "would permit any physical punishment, no matter how diabolic or inhuman," absent some quantum of injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7, 9). The absence of serious injury, however, is not irrelevant as the extent of injury could provide an indication of the amount of force actually applied. *Id*.

## B. Evidentiary Analysis

After careful consideration of all the evidence, the court finds that Golston's version of events as to the material facts and the testimony of his inmate witnesses regarding the injuries he suffered are not credible.[3] No credible evidence, testimonial or documentary, corroborates Golston's testimony regarding the amount of force used by defendant Enfinger. Moreover, the medical examination conducted within a short period of time after the use of force made the basis of this case demonstrates that Golston suffered only a small scratch to his right forehead. Upon completion of her examination, the attending nurse provided no treatment to Golston other than cleaning the scratch with a saline solution whereupon she released him to correctional officers for return to the correctional facility. The court does not find credible or corroborated by credible evidence the allegations by Golston that defendant Enfinger, acting wholly without provocation or any lawful purpose, sadistically and maliciously punched him in the face several times, repeatedly kicked him

---

[3]In reaching this conclusion, the court is aware of the rule in this circuit that a credibility determination cannot be based solely on the "status" of a witness as a criminal defendant or convicted inmate. Rather, the court must weigh the testimonies of all the witnesses, taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand. *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999). Aside from Golston's demeanor during his testimony, his obvious interest in a favorable outcome, and the contradictions in his testimony and that of inmate Whigham regarding Golston being escorted by Officer Enfinger to the shift office, the allegations presented by Golston with respect to the nature and extent of the force used by defendant Enfinger and the alleged injuries suffered are wholly inconsistent with the medical examination conducted upon him shortly after the incident at issue. In addition, Golston's credibility was adversely impacted due to his testimonial admission of having been found guilty of over forty (40) disciplinary infractions, including disorderly conduct and inciting a riot. Finally, the demeanor of the inmate witnesses while on the stand, including the manner in which they delivered their testimony, and their inconsistent testimony regarding the injuries suffered by Golston severely undermined their credibility with this court.

or slammed his head into the wall while Sgt. Williams simply watched. The only credible evidence before the court demonstrates that defendant Enfinger applied force in an effort to maintain discipline and security after Golston attempted to kick him. Consequently, the court finds that defendant Enfinger did not use force against Golston maliciously or sadistically to cause harm nor did defendant Williams fail to intervene in the face of an excessive use of force against Golston.

### IV. CONCLUSION

In sum, the credible evidence supports the testimony of defendant Enfinger that he merely restrained Golston after Golston attempted to kick him. The court readily concludes that the record fails to establish any constitutionally impermissible use of force by defendant Enfinger and likewise does not demonstrate that defendant Williams failed to intervene to protect Golston from an unwarranted use of force. Consequently, defendants Enfinger and Williams are entitled to judgment as a matter of law.

Accordingly, based on the evidentiary record, it is the RECOMMENDATION of the Magistrate Judge that:

1. Judgment be entered in favor of defendants Enfinger and Williams and against the plaintiff on the excessive force and failure to protect claims.

2. This case be DISMISSED with prejudice.

3. Costs be taxed against the plaintiff for which execution my issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 16, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 2nd day of April, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE